UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SCHEIBE, on behalf of all those similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ESUPPLEMENTS, LLC, a Utah limited liability company doing business as Nutricost,<br><br>　　　　　　　Defendant. | Case No.: 3:22-cv-01765-BEN-MSB<br><br>**ORDER DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 15]** |

## I.   INTRODUCTION

Plaintiff Jacob Scheibe on behalf of himself and all those similarly situated, brings this action against Defendant Esupplements, LLC doing business as Nutricost alleging the misrepresentation and false advertising of certain products. Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 15. The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. ECF No. 18. After considering the papers submitted and applicable law, the Court **DENIES-IN-PART** Defendant's Motion to Dismiss.

## II. BACKGROUND

This case arises from Defendant's alleged misrepresentation of nutritional labels on a product that Plaintiff purchased.

### A. Statement of Facts[1]

Plaintiff "is a student who has recently sought to lose weight and add muscle mass, and to do so has begun to eat with intentionality and take dietary supplements." ECF No. 14 ("FAC") at 2, ¶ 2. Defendant's "Products are dietary supplements that contain an amino acid blend that purportedly support endurance during workouts and aid in muscle repair when taken after workouts. They are used to increase muscle mass and lose weight associated with fat." *Id.* at 2, ¶ 3. On July 28, 2022, Plaintiff purchased Defendant's Blue Raspberry EAA (the "Product") from third-party retailer Amazon.com. *Id.* at 1–2, ¶ 1.

Plaintiff carefully reviews labels, including the Product's "labels, to track calories in order to maintain progress toward his weight loss goals." *Id.* at 2, ¶ 2. "Like many consumers, [Plaintiff] is increasingly attuned to, and relies on, claims that foods are 'all natural,' minimally processed, or otherwise free of artificial ingredients." *Id.* at 4, ¶ 16. Plaintiff alleges that:

> Plaintiff viewed Defendant's "Natural Flavors With Other Natural Flavors" statement on the Products' labels prior to purchasing the Products. He reasonably understood this statement, as well as Defendant's failure to disclose the use of artificially derived malic acid, to represent that the Products contain only natural flavorings. This representation was false.

---

[1] The majority of the facts set forth are taken from the First Amended Complaint and for purposes of ruling on the Defendant's Motion to Dismiss, the Court assumes the truth of all plausible non-conclusory allegations. *See Grabowski v. Ariz. Bd. of Regents*, 69 F. 4th 1110, 1114 (9th Cir. 2023).

Compl. at 9, ¶ 46. Plaintiff alleges he "suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury." *Id.* at 10, ¶ 50.

Plaintiff further alleges that the "Product contains an ingredient identified as 'malic acid.'" *Id.* at 5, ¶ 24. "While there is a naturally occurring form of malic acid, it is extremely expensive to formulate in large quantities and is almost never used in mass-produced food products." *Id.* at 6, ¶ 25. Defendant uses "DL malic acid"—which is a synthetic petrochemical—in these Products. *Id.* "This type of malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." *Id.* at 6, ¶ 26. Sugars, acids, lipids, and various volatile compounds interact to impart fruit flavors in food, and "[t]he sweetness or tartness of fruit flavor is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as malic acid." *Id.* at 6, ¶ 27. "The DL malic acid used in the Products is used to create, simulate, and/or reinforce the sweet and tart taste that consumers associate with the characterizing fruit flavors such as raspberries" (which have their own natural ratio of sugars and acids). *Id.* at 6, ¶ 28–29. "It does so by changing the ratio between acids and sugars in the Products." *Id.* at 6, ¶ 29.

"Defendant uses the artificial petrochemically derived DL malic acid in its Products to create this sweet and tart flavor but pretends otherwise, conflating natural and artificial flavorings, misbranding the Products and deceiving consumers." *Id.* at 6, ¶ 30. Plaintiff alleges that:

> Undersigned counsel sent the Products purchased by Plaintiff to be tested by an independent third-party laboratory. The results of that testing were received on or about September 12, 2022. That testing detected the presence of the "D" isomer in the malic aid Defendant uses in these Products. The presence of the D isomer means that the ingredient used in the Products is DL malic acid, a synthetic substance derived from petrochemicals. This is the industry-

> standard method of determining whether the malic acid used in a food product is artificially derived or naturally occurring.

*Id.* at 6–7, ¶ 31.

Plaintiff further alleges that "[i]f a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both." *Id.* at 8, ¶ 37. "If any artificial flavor is present that 'simulates, resembles or reinforces' the characterizing flavor, the front label must prominently inform consumers that the product is 'Artificially Flavored.'" *Id.* "Here, the Products' labels state the characterizing flavors and also use depictions of fruits to identify the characterizing flavor." *Id.* at 7, ¶ 36. "DL malic acid is not a "natural flavor" as this term is defined by California regulations and is not derived from a fruit or vegetable or any other natural source." *Id.* at 8, ¶ 41. Because it is derived from petroleum products, the Products contain artificial flavorings. *Id.* However, the "Products have none of the required disclosures regarding the use of artificial flavors." *Id.* at 9, ¶ 43.

**B.      Procedural History**

On November 10, 2022, Plaintiff filed his Complaint against Defendant alleging: (1) unfair conduct in violation of California Business & Professions Code sections 17200, *et seq.* (the "UCL"); (2) fraudulent conduct in violation of California Business & Professions Code sections 17200, *et seq.*; (3) unlawful conduct in violation of California Business & Professions Code sections 17200, *et seq.*; (4) violations of California Business & Professions Code sections 17500, *et seq.* (the "FAL"); (5) violation of the Consumer Legal Remedies Act, Cal. Civ. Code sections 1750, *et seq.* (the "CLRA"); and (6) unjust enrichment. *See generally* Compl.

Defendant filed a Motion to Dismiss Plaintiff's Complaint, *see* ECF No. 3, which this Court granted-in-part on July 10, 2023. Plaintiff filed a First Amended Complaint, alleging only: (1) violation of the Consumer Legal Remedies Act, Cal. Civ. Code sections

1750, *et seq.* (the "CLRA"); and (2) unjust enrichment. *See generally* FAC. Defendant subsequently filed the instant Motion to Dismiss. ECF No. 15-1 ("Motion"). Plaintiff filed an Opposition. ECF No. 16 ("Oppo."). Defendant replied. ECF No. 17 ("Reply"). And Plaintiff filed a Notice of Supplemental Authority. ECF No. 19.

### III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court assumes the truth of all plausible, non-conclusory allegations in the complaint. *Grabowski*, 69 F. 4th at 1114. A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

"Generally, unless the court converts the Rule 12(b)(6) motion into a summary judgment motion, it cannot consider material outside the complaint (*e.g.*, facts presented in briefs, affidavits or discovery materials)." Phillips & Stevenson, California Practice Guide: Federal Civil Procedure Before Trial § 9:211 (The Rutter Group April 2020). Thus, in evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with it. *Van Buskirk v. Cable News Network Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Courts may also consider any statements made in a pleading or motion, including concessions made in plaintiff's response to the motion to dismiss as well as in response to any other pleading or motion. Fed. R. Civ. P. 10(c).

## IV. DISCUSSION

Defendant argues that: (1) Plaintiff lacks standing to pursue injunctive relief; and (2) Plaintiff fails to allege any claims for equitable relief because there are no allegations respecting the inadequacy of Plaintiff's legal remedies. *See generally* MTD. Plaintiff concedes that his equitable claims should be dismissed but distinguishes his other equitable claims from his claim for injunctive relief. *See generally* Oppo.

### A. Standing

"Article III of the U.S. Constitution authorizes the judiciary to adjudicate only 'cases' and 'controversies.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018). To demonstrate Article III standing, a plaintiff must show a "concrete and particularized" injury that is "fairly traceable" to the defendant's conduct and "that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* at 1547 (internal quotation marks and citations omitted).

Defendant argues that Plaintiff's FAC fails to cure the deficiency noted in this Court's prior Order. Motion at 5–6. Specifically, Defendant contends that Plaintiff lacks standing because he does not sufficiently allege his continued desire or intent to purchase the Products in the future. *See id.*

Plaintiff's new allegation is that:

> Plaintiff appreciates certain characteristics and benefits of the Product[], including that [] [it] purport[s] to contain ample amounts of essential amino acids per serving. [Plaintiff] would like to purchase the Products in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the deceptions regarding flavoring found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

FAC at 13, ¶ 66.  Defendant argues that "[u]nder the circumstances of this case, this new allegation does not establish Article III standing."  Motion at 6.  First, Defendant argues the allegation fails because Plaintiff does not seek a mandatory injunction requiring Defendant to make a product with a *different* ingredient, nor could Plaintiff seek such a remedy.  *Id.*  Second, Defendant contends:

> [E]ven assuming the Product contains artificial malic acid used as flavoring, and even assuming this Court were to issue an order prohibiting [Defendant] from including the 'Naturally Flavored with other Natural Flavors' statement on the Products' labels, it would not address any purported threat of future injury alleged by Plaintiff.  The reason is simple: the Court has already held that, in the Product's ingredients list, it is sufficient for [Defendant] to identify the ingredient as "malic acid," regardless of whether it is artificial or natural malic acid, and federal law preempts any state-law claim to the contrary.

*Id.* at 6.  Essentially, Defendant is arguing that even if natural flavors is removed from the Product's label, it would not inform the consumer whether the malic acid is natural or artificial.  Defendant argues that Plaintiff does not have standing to pursue a purely informational injury.  Plaintiff counters that "Defendant relies on an unreported, non-precedential Ninth Circuit opinion" that is distinguishable from the case at hand, and that on-point, binding precedent forecloses Defendant's argument.  Oppo. at 4–5.  The Court tends to agree with Plaintiff.

Defendant relies primarily on *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021).  There, the plaintiffs brought suit contending "that Coca-Cola misled the public by using the advertising slogan '*no artificial flavors. no preservatives added. since 1886*' even though Coke contains phosphoric acid," which the plaintiffs alleged was a chemical preservative or artificial flavor.  *Id.* at *1.  "None of the plaintiffs in th[at] case allege[d] a desire to purchase Coke *as advertised*, that is, free from what they believe to be artificial flavors or preservatives, nor d[id] they allege in any other fashion a concrete, imminent injury."  *Id.* at *2.  As a

result, the Court held that none of the plaintiffs had standing to pursue injunctive relief. *Id.* at *3. Defendant's Motion to Dismiss focuses on a particular subset of plaintiffs from *In re Coca-Cola*, who "explained that they were not concerned with phosphoric acid, but rather with whether Coca-Cola was telling the truth on its product's labels." *Id.* at *2. Both of those plaintiffs "asserted that they would be interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors." *Id.* The Court held this allegation to be a bare procedural allegation that did not confer standing. *Id.* Defendant argues that the same is true here, because the proper labeling would not change the Product itself. The Court disagrees.

As to *In re Coca-Cola*, none of the plaintiffs there stated their desire to purchase the product again. *See id.* at *2. The Ninth Circuit distinguished being "interested" in purchasing a product with a different label from desiring to purchase a product with a different label. Here, Plaintiff alleges her desire to purchase the Product again, which differentiates this case. *See Brown v. Food for Life Baking Co.*, No. 21-CV-10054-TLT, 2023 WL 2637407, at *6 (N.D. Cal. Feb. 28, 2023) (distinguishing *In re Coca-Cola* based on the plaintiffs allegations that they would purchase the product again). Furthermore, *In re Coca-Cola* is not binding precedent for purposes of this Court's decision. Plaintiff relies on *Davidson v. Kimberly Clark*, which this Court discussed in its prior dismissal order. 889 F.3d 956 (9th Cir. 2018). In *Davidson*, the plaintiff purchased wipes marketed as "flushable" and brought suit alleging that the wipes "were not in fact appropriate for disposal by flushing down a toilet." *Id.* at 962. *Davidson* found standing because although the plaintiff alleged her continued "desire to purchase wipes that are suitable for disposal in a household toilet, and [that she] would purchase truly flushable wipes manufactured by" the defendant "if it were possible to determine prior to purchase if the wipes were suitable to be flushed." *Id.* at 963 (internal quotation marks omitted).

The *Davidson* Court further advised of two potential situations where consumer plaintiffs have standing to pursue injunctive relief. The threat of future harm may be the consumer's plausible allegation that: (1) "she will be unable to rely on the product's

advertising or labeling in the future, and so will not purchase the product although she would like to;" or (2) "she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. It seems Plaintiff falls into the first category because she claims there are other aspects of the Product that she likes (*i.e.*, that the Product purports "to contain ample amounts of essential amino acids) and she alleges her desire to purchase the Product in the future, but she cannot currently rely on the labeling. *See* FAC at 13, ¶ 66. Plaintiff's allegations thus fall within the scope of *Davidson*.[2]

In addition, Plaintiff further differentiates this case from *In re Coca-Cola* by alleging an economic harm in his Notice of Supplemental Authority. *See* ECF No. 19. Plaintiff's First Amended Complaint makes various allegations about consumer purchasing behavior, including that "40 percent of consumers rate the absence of artificial flavors in their foods as important to them when deciding between competing products, and more than 60 percent try to avoid artificial flavors at least some of the time." FAC at 4, ¶ 19. Plaintiff also alleges how "[r]oughly 60 to 70 percent of consumers reported a willingness to pay a price premium for 'clean label foods,'" which includes foods that are all natural, and those that contain no artificial ingredients or preservatives. *Id.* at 4, ¶ 17. Plaintiff continues that the presence or absence of certain characterizing ingredients "has a material bearing on price or consumer acceptance . . . ." *Id.* at 8, ¶ 38. Plaintiff claims that "he would not have purchased the Product[] from Defendant if the truth about the Product[] were known, or would have only been willing to pay a substantially reduced price for the Product[] had he known that Defendant's representations were false or misleading." *Id.* at 9, ¶ 47. Finally, Plaintiff alleges that "because of its deceptive and false labelling statements, Defendant

---

[2]     The Court clarifies that although *In re Coca-Cola* is not binding precedent, the case is factually distinguishable, given the plaintiffs failure to allege their desire to purchase the product again. Here, Plaintiff alleges her desire to purchase the Product in the future.

was enabled to charge a premium for the Product[] relative to key competitors' products, or relative to the average price charged in the marketplace." *Id.* at 9, ¶ 48.

The authority Plaintiff cites is also unpublished and nonbinding on this Court. *See* ECF No. 19. However, reading the allegations in the light most favorable to Plaintiff, as required at this stage in the proceedings, the Court finds Plaintiff's argument of an alleged economic injury persuasive. If properly labeled, it is plausible that the price of the Product would be lower, given the alleged mark-ups on products not containing artificial flavors when compared to those with artificial flavors. Plaintiff alleges he would not have purchased the products as priced if he knew the label representations were false, but that he would have been willing to pay a substantially reduced price. As such, Plaintiff alleged interest is that the Product be properly labeled and priced in accordance with that label so that Plaintiff does not pay the premium associated with no artificial flavors when there are in fact, artificial flavors present. As such, the Court finds Plaintiff alleges more than an informational injury, sufficient to confer standing for injunctive relief. *See Paschoal v. Campbell Soup Co.*, No. 21-CV-07029-HSG, 2022 WL 4280645, at *5 (N.D. Cal. Sept. 15, 2022) ("As to the damages claim, Plaintiffs allege more than a 'bare procedural violation' [for purposes of standing] because they allege they paid a premium or would not have otherwise purchased the Products but for the challenged representations."). Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for injunctive relief is **DENIED**.

### B. Equitable Relief

Defendant argues that Plaintiff's equitable relief claims under the CLRA and for unjust enrichment must be dismissed, because Plaintiff again fails to allege the inadequacy of his legal remedies. Motion at 4–5. Plaintiff concedes that he intended to withdraw his equitable relief claims, with the exception of injunctive relief.[3] Oppo. at 2–3. Because the

---

[3]   Defendant asks the Court to dismiss Plaintiff's injunctive relief claim because Plaintiff concedes to the dismissal of his equitable claims. However, it is clear from

parties do not dispute that Plaintiff's equitable relief claims require him to plead the inadequacy of his legal remedies, the Court does not reiterate the law and its prior legal analysis. *See* ECF No. 13 at 8–9 (this Court's prior dismissal order explaining why equitable relief claims require allegations that legal remedies are inadequate).

Plaintiff's CLRA claim currently seeks money damages, as well as injunctive relief, disgorgement, and restitution. FAC at 15, ¶¶ 75–78. Because Plaintiff concedes to the dismissal of his equitable relief claims, the allegations seeking disgorgement and restitution under the CLRA are dismissed—Plaintiff's requests for money damages and injunctive relief will proceed. Turning to Plaintiff's unjust enrichment claim, Plaintiff seeks equitable relief through disgorgement and restitution. *Id.* at 16, ¶ 85. Plaintiff's unjust enrichment claim therefore seeks only equitable relief, which Plaintiff concedes to dismiss. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's claim for unjust enrichment and Plaintiff's request for restitution and disgorgement under the CLRA.

## V. CONCLUSION

For the foregoing reasons, the Court rules on Defendant's Motion to Dismiss as follows:

1. The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's injunctive relief claim for lack of standing.

2. The Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim, as well as Plaintiff's claims for restitution and disgorgement under the CLRA.

**IT IS SO ORDERED.**

Dated: November 16, 2023

HON. ROGER T. BENITEZ
United States District Judge

---

Plaintiff's briefing that he distinguishes between his injunctive relief claim and his equitable relief claims. As such, the Court rejects Defendant's argument.